OPINION
{¶ 1} Appellant, ZW, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and awarding permanent custody of her son, SW, to Franklin County Children Services ("FCCS"). Because appellant assigns no reversible error, constitutional or otherwise, we affirm.
 {¶ 2} On February 11, 2002, FCCS filed a complaint to have SW declared neglected and/or dependant due to reported domestic violence between appellant and her boyfriend. On April 16, 2002, the court found SW to be a dependant child and placed him under FCCS's protective supervision while he remained in the custody of appellant.
 {¶ 3} On September 27, 2002, after appellant was arrested and sentenced to prison, the trial court issued an emergency order awarding FCCS temporary custody of SW; on October 17, 2002, the court held a review hearing and awarded FCCS temporary custody of SW. FCCS also adopted a reunification case plan that required appellant to provide for the basic care and safety of SW, obtain and maintain stable housing, refrain from contacting her boyfriend and keep SW in a safe environment, attend and actively participate in parenting classes, complete domestic violence counseling, complete a substance abuse evaluation and recommendations, attend and complete GED preparatory classes and take the test to obtain her GED, attend counseling and follow all recommendations, and seek at least part-time employment.
 {¶ 4} On October 24, 2003, FCCS filed a motion for permanent custody pursuant to R.C. 2151.413, 2151.353(A)(4) and2151.414(B)(1)(d). Before the court held a hearing on the permanent custody motion, appellant moved the court (1) to address the constitutional issues involved in the case, (2) to dismiss the permanent custody motion, and (3) for a permanent plan living arrangement ("PPLA"). Appellant's aunt and grandmother moved the court for alternative disposition.
 {¶ 5} After several continuances, the court held three days of hearings in June 2004, October 2005, and November 2005. Based on the evidence adduced from the hearings, the court concluded (1) SW had been in the custody of FCCS for 12 months of a consecutive 22-month period, and (2) placing SW in the permanent custody of FCCS and terminating appellant's parental rights was in the best interest of SW. The court also denied appellant's motions and the motions of appellant's aunt and grandmother for alternative disposition.
 {¶ 6} Appellant appeals, assigning 15 errors:
I. [THE TRIAL COURT ERRED] IN FAILING TO APPLY THE STRICT SCRUTINY ANALYSIS AS MANDATED UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.
II. [THE TRIAL COURT ERRED] IN FAILING TO SOLELY APPLY [R.C.] 2151.414(B)(1)(d) AS MANDATED UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.
III. [THE TRIAL COURT ERRED] IN FAILING TO DISMISS THE PCC MOTION PURSUANT TO IN RE: C.W. AS MANDATED BY THE UNITED STATES AND OHIO CONSTITUTIONS.
IV. [THE TRIAL COURT ERRED] IN NOT DECLARING R.C.2151.414(B)(1)(d) UNCONSTITUTIONAL IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS.
V. [THE TRIAL COURT ERRED] IN FAILING TO PLACE CHILD WITH MATERNAL AUNT IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS.
VI. [THE TRIAL COURT ERRED] IN FAILING TO PLACE CHILD WITH SIGNIFICANT OTHER IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS.
VII. [THE TRIAL COURT ERRED] IN DENYING PPLA MOTION IN LIGHT OFIN RE: A.B. AND FURTHER IN VIOLATION OF R.C. 2151.415.
VIII. [THE TRIAL COURT ERRED] IN DENYING PPLA MOTION IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS.
IX. [THE TRIAL COURT ERRED] IN NOT DECLARING R.C. 2151.413 AND2151.414 UNCONSTITUTIONAL ON THE BASIS THAT THE STATUTORY PROVISIONS CREATE DISCRIMINANT CLASSIFICATIONS IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS.
X. [THE TRIAL COURT ERRED] IN APPLYING THE FACTOR "THE INTERACTION AND INTERRELATIONSHIP OF THE CHILD WITH . . . FOSTERAND OUT OF HOME PROVIDERS . . ." [R.C. 2151.414(D)(1)] IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS.
XI. [THE TRIAL COURT ERRED] IN FINDING THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD UNDER R.C. 2151.414(D).
XII. [THE TRIAL COURT ERRED] IN FAILING TO MAKE AN EXPRESS FINDING OF PARENTAL UNFITNESS IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS.
XIII. [THE TRIAL COURT ERRED] IN TERMINATING PARENTAL RIGHTS IN VIOLATION OF IN RE: GIBSON, McGRAW.
XIV. [THE] TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN ACCORDANCE WITH THE UNITED STATES AND OHIO CONSTITUTIONS.
XV. [THE] TRIAL COURT'S DECISION IS NOT SUPPORTED BY SUFFICIENT PROBATIVE EVIDENCE IN ACCORDANCE WITH THE UNITED STATES AND OHIO CONSTITUTIONS.
 {¶ 7} Before we address the specifics of appellant's arguments, we first note that 14 of appellant's 15 assignments of error allege a deprivation of her constitutional right to the care, custody, and management of her child. The United States and Ohio Supreme Courts recognize the essential and basic rights of a parent to rear his or her child. Troxel v. Granville (2000),530 U.S. 57, 66; In re Murray (1990), 52 Ohio St.3d 155, 157. Such rights, however, are not absolute. In re B.L., Franklin App. No. 04AP-1108, 2005-Ohio-1151, at ¶ 7. A parent's natural rights are always subject to the ultimate welfare of the child.In re Cunningham (1979), 59 Ohio St.2d 100, 106; In re B.L.,
at ¶ 7. As a result, although appellant has a constitutionally protected right to rear her child, her right may be terminated when necessary for the best interest of the child. Id. Accordingly, because Ohio's statutory scheme reconciles a parent's constitutional right with the state's parens patriae
interest in providing for the security and welfare of children under its jurisdiction, it does not unconstitutionally deprive appellant of her parental rights. In re Thompson (Apr. 26, 2001), Franklin App. No. 00AP-1358 ("Thompson I"); In reThompson, Franklin App. No. 02AP-557, 2003-Ohio-580, at ¶ 22 ("Thompson II").
 {¶ 8} In the interest of clarity, we address appellant's assignments of error out of order. We initially address appellant's constitutional arguments, then analyze appellant's arguments that contest the trial court's application of Ohio's permanent custody provisions, and finally determine whether competent, credible evidence supports the trial court's ruling that terminated appellant's parental rights and awarded permanent custody of SW to FCCS.
 {¶ 9} Appellant's first, fourth, ninth, tenth, and thirteenth assignments of error categorically contest the constitutionality of certain statutory provisions that govern permanent custody proceedings. We begin our analysis with the principle that statutes carry a strong presumption of constitutionality.Harrold v. Collier, 107 Ohio St.3d 44, 2005-Ohio-5334, at ¶ 36. The party challenging the statutes bears the burden of proving that the legislation is unconstitutional beyond a reasonable doubt. Id.
 {¶ 10} A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts. Id. An "as applied" challenge asserts that a statute is unconstitutional as applied to the challenger's particular situation. In re B.L.,
at ¶ 13. Although appellant's fourth, ninth, and tenth assignments of error assert facial and "as applied" constitutional challenges, appellant sets forth no set of facts in her brief that supports a constitutional challenge as applied to her particular conduct. Appellant's constitutional challenges are therefore all facial in nature; to succeed, appellant must establish that the statute would be valid under no set of circumstances. Collier, at ¶ 38.
 {¶ 11} In her fourth assignment of error, appellant contends the trial court erred in not declaring R.C. 2151.414(B)(1)(d) unconstitutional because it creates an irrebuttable presumption of parental unfitness and includes this presumption in determining the best interests of the child. This court, however, recently rejected that argument and held that R.C.2151.414(B)(1)(d) is constitutional on its face. See, e.g., Inre Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435, at ¶ 12-13; In re Bray, Franklin App. No. 04AP-842, 2005-Ohio-1540;In re Brooks, Franklin App. No. 04AP-164, 2004-Ohio-3887. Pursuant to that precedent, R.C. 2151.414(B)(1)(d) is not unconstitutional. Appellant's fourth assignment of error is overruled.
 {¶ 12} Appellant's ninth assignment of error contends R.C.2151.413 and 2151.414 unconstitutionally discriminate between parents whose parental rights are terminated and parents who retain their parental rights. Appellant argues that such classification violates a parent's due process and equal protection rights. This court recently rejected appellant's equal protection argument and held that R.C. 2151.413 and 2151.414 do not violate a parent's equal protection rights because they do not distinguish between groups of parents or treat similarly situated parents differently. In re B.L., at ¶ 16. Rather, the statutes apply and operate identically to every parent whose children are involved in permanent custody proceedings, providing the trial courts with guidance and direction in determining whether parents should or should not have their parental rights permanently terminated. Id. While trial courts may come to different conclusions in different cases based upon different facts, such varying results do not violate appellant's equal protection rights. Id.
 {¶ 13} Similarly, in Thompson I, we addressed and rejected appellant's due process argument. In Thompson I, this court recognized that although Ohio has made the best interest of the child the touchstone for all proceedings addressing a permanent custody commitment, parents are entitled to strict due process guarantees when the state seeks to terminate parental custody. Id. We concluded that the extensive and rather intricate statutory framework expressed in R.C. 2151.413 and 2151.414
incorporates appropriate due process requirements and appropriately reflects the need to balance the extraordinarily significant rights and interests involved in such proceedings. Id. Accordingly, the balance the legislature struck does not constitutionally offend appellant's due process rights. Consistent with this court's precedent, we overrule appellant's ninth assignment of error.
 {¶ 14} Appellant contends in her tenth assignment of error that R.C. 2151.414(D)(1) is unconstitutional. Specifically, appellant contends its mandate that the court consider the interaction and interrelationship of the child with the "foster parents" and "out of home providers" is immaterial, irrelevant, arbitrary, capricious, invidious, and inconsistent with the United States Supreme Court's mandate in Troxel that the parental right to raise children is paramount to all other asserted rights. Contrary to appellant's assertions, this court addressed and rejected the same argument in In re B.L., at ¶ 19-21. Consistent with In re B.L., we overrule appellant's tenth assignment of error.
 {¶ 15} Appellant's thirteenth assignment of error contends the trial court erroneously terminated her parental rights in violation of this court's mandate in In re Gibson (July 19, 1979), Franklin App. No. 78AP-856. In Gibson, this court noted that permanent commitment is out of the question when a true parent-child relationship exists and love and affection flow between the parent and child. This court, however, recently found that because Gibson pre-dates the enactment of R.C.2151.414(B)(1)(d), which governs the trial court's resolution of permanent custody proceedings, the trial court need not considerGibson in deciding permanent custody matters. In re B.L., at ¶ 25. Consistent with In re B.L., we overrule appellant's thirteenth assignment of error.
 {¶ 16} Appellant contends in her first assignment of error that the trial court erred in failing to apply a strict-scrutiny analysis in assessing her constitutional challenges. Appellant suggests that because she has a fundamental constitutional right to rear her child, courts must review the challenged statutes under a strict-scrutiny analysis. Under the strict-scrutiny standard, a statute that infringes on a fundamental right is unconstitutional unless the statute is narrowly tailored to promote a compelling governmental interest. Collier, at ¶ 39.
 {¶ 17} Here, we cannot say, based on the record, that the trial court failed to apply strict scrutiny to appellant's constitutional challenges. The court summarily denied appellant's constitutional motion without mentioning the test it employed in the decision. Further, appellant offers no rationale for why these statutes fail under a strict-scrutiny test. Appellant's unsupported assertions of unconstitutionality are insufficient to satisfy appellant's burden, particularly in light of the well-recognized presumption of constitutionality. Moreover, this court has found each of the challenged statutes to be constitutional. For these reasons, appellant's first assignment of error is overruled.
 {¶ 18} Having recognized that Ohio's statutory scheme regarding permanent custody does not unconstitutionally deprive appellant of her parental rights, and having overruled appellant's specific constitutional challenges, we now address appellant's arguments that contest the trial court's application of Ohio's permanent custody provisions to the facts of appellant's case.
 {¶ 19} Appellant contends in her third assignment of error that the trial court erred in denying her motion to dismiss, because SW was not in temporary custody for 12 months when FCCS filed its permanent custody motion pursuant to R.C.2151.414(B)(1)(d). Appellant argues the 12-month time period began to run on December 2, 2002, the day the court adopted the case plan, and thus FCCS prematurely filed its permanent custody motion on October 24, 2003.
 {¶ 20} R.C. 2151.413 sets forth guidelines for determining when a public children services agency or private child-placing agency must or may file a motion for permanent custody. In reC.W., 104 Ohio St.3d 163, 2004-Ohio-6411, at ¶ 8. Most relevant to the issue before us is R.C. 2151.413(D)(1), which states that "[i]f a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, the agency with custody shall file a motion requesting permanent custody of the child." ("twelve out of twenty-two" rule)
 {¶ 21} Before a court can grant permanent custody to the moving agency, the court must determine, in part, that the child meets the "twelve out of twenty-two" rule. R.C.2151.414(B)(1)(d). For purposes of R.C. 2151.414(B)(1)(d), "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated [to temporary custody] or the date that is sixty days after removal of the child from home."
 {¶ 22} Here, the court removed SW from appellant's home on September 27, 2002 by an emergency order awarding FCCS temporary custody. The trial court conducted a hearing on October 17, 2002, held that SW was a dependent minor, and awarded FCCS temporary custody until further court order. Pursuant to R.C.2151.414(B)(1)(d), SW entered the temporary custody of FCCS on October 17, 2002, because the October 17 hearing occurred earlier than 60 days after September 27, the day SW was removed from his home. Because FCCS filed its permanent custody motion on October 24, 2003, more than 12 months after SW was placed in temporary custody, the trial court did not err in denying appellant's motion to dismiss. Appellant's third assignment of error is overruled.
 {¶ 23} Appellant's second assignment of error contends the trial court erroneously adjudicated her case under R.C.2151.414(B)(1)(a) and 2151.414(B)(1)(d) when FCCS's permanent custody motion was based solely on R.C. 2151.414(B)(1)(d). Appellant argues the trial court's alleged misapplication violated her due process and equal protection rights and is contrary to the holding in In re Damron, Franklin App. No. 03AP-419, 2003-Ohio-5810.
 {¶ 24} R.C. 2151.414(B)(1)(a) provides, in pertinent part, that the court may grant custody of a child to FCCS if the court determines that "[t]he child is not abandoned or orphaned," does not meet the "twelve out of twenty-two" rule "and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." On the other hand, R.C. 2151.414(B)(1)(d) provides, in pertinent part, that the court may grant custody of a child to FCCS if the court determines that the "twelve out of twenty-two" rule applies.
 {¶ 25} In In re Damron, the issue before this court was whether the trial court erred by failing to consider the factors needed to make an R.C. 2151.414(B)(1)(a) determination. This court stated that because the language in R.C. 2151.414(B)(1)(a) refers to a child that does not meet the requirements of R.C.2151.414(B)(1)(b), (c), or (d), R.C. 2151.414(B)(1)(a) applies only when none of the remaining three subsections is triggered.In re Damron, at ¶ 9. We held, in part, that because the facts involved R.C. 2151.414(B)(1)(d), they did not and could not trigger subsection (a); thus the trial court did not need to consider the factors necessary to a determination under R.C.2151.414(B)(1)(a).
 {¶ 26} Here, the court began its analysis by expressly stating that FCCS brought its permanent custody motion pursuant to R.C. 2151.414(B)(1)(d). After stating R.C. 2151.414(B)(1)(d)'s applicable language, the court made the requisite finding that SW was in the custody of FCCS for 12 months of a consecutive 22-month period; the court did not purport to analyze the case under R.C. 2151.414(B)(1)(a). Because FCCS's permanent custody motion was brought pursuant to R.C. 2151.414(B)(1)(d), the court's holding was premised exclusively on R.C.2151.414(B)(1)(d), and the evidence supports the trial court's holding under R.C. 2151.414(B)(1)(d), the trial court did not violate appellant's equal protection and due process rights through any incidental reference to whether SW could be placed with appellant. Accordingly, appellant's second assignment of error is overruled.
 {¶ 27} Appellant contends in her twelfth assignment of error that the trial court erred in terminating her parental rights without expressly finding that she is an unfit parent. Contrary to appellant's assertion, R.C. 2151.414(B)(1)(d), applied in appellant's case, does not require the trial court to find a parent unfit before it may terminate parental rights. In reB.L., at ¶ 22, citing In re Stillman, 155 Ohio App.3d 333,2003-Ohio-6228, at ¶ 50. Rather, to terminate parental rights, the trial court was required to find that termination of parental rights is in the best interest of the child, and that the "twelve out of twenty-two" rule applies. Parental unfitness is not a required finding to terminate parental rights under that section. See In re B.L., at ¶ 22.
 {¶ 28} Even if such a finding were required, parental unfitness is inherent in the trial court's finding compliance with the "twelve out of twenty-two" rule. A "parent has twelve months to demonstrate that the parent is able, suitable, or fit to care for [a] child. Thus, the parent is not deprived of the ability * * * to demonstrate the parent's ability, suitability, or fitness to care for the child [under R.C. 2151.414(B)(1)(d)]."In re Brooks, at ¶ 32, quoting In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723, at ¶ 31. R.C. 2151.414(B)(1)(d) necessarily implies some level of parental unfitness. Appellant's twelfth assignment of error is overruled.
 {¶ 29} In her fifth and sixth assignments of error, appellant asserts the trial court erred in not placing SW with either appellant's sister, XW, or a significant other, SC. Appellant contends that she presented credible evidence at the November 2005 hearing that XW and SC were fit to serve as parents and capable of caring for SW until the age of maturity.
 {¶ 30} Initially, we question whether appellant has standing to assert the rights of others who are not parties to this appeal. See In re Conn, Franklin App. No. 03AP-348,2003-Ohio-5344, at ¶ 7. Even if appellant has the requisite standing, a trial court is not required to consider placing a child with a relative prior to granting permanent custody to an agency, In re Zorns, Franklin App. No. 02AP-1297, 2003-Ohio-5664, at ¶ 28, as relatives seeking custody of a child are not afforded the same presumptive rights that a parent receives. Id. A trial court is not even required to find by clear and convincing evidence that a relative is not a suitable placement option. In re J.S., Franklin App. No. 05AP-615, 2006-Ohio-702, at ¶ 34. Instead, the trial court has the discretion to determine whether to place children with a relative. Id. We will reverse such a decision only upon an abuse of that discretion. Id. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 31} Here, the trial court summarily denied XW's and SC's motions for alternative disposition after it found that SW's best interests would be served in the custody of FCCS. Although the court did not explain why the two were not appropriate placements for SW, the record reveals a basis for the court's decision.
 {¶ 32} FCCS thoroughly investigated XW as a possible placement and arranged several supervised and unsupervised visits between XW and SW. In fact, FCCS delayed the permanent custody proceedings in order to explore XW's potential as a placement option. XW, however, later informed the caseworker that she could not and was not willing to take custody of SW because she lost her job, was evicted, and did not have any place to live. Although XW re-expressed her desire to take custody of SW on the last day of the proceedings, she acknowledged that she had not seen SW in six months and did not have stable housing. Finally, some concern arose from XW's belief that SW reasonably could live with appellant. Given this evidence, the trial court did not abuse its discretion by denying XW's motion for alternative disposition. Appellant's fifth assignment is overruled.
 {¶ 33} By November 2005, SC had not spent an extended period of time with SW for three years and had not seen SW for a year. More importantly, SC is the mother of the boyfriend whose domestic violence episode with appellant, involving SW, led to FCCS's removing SW from appellant. Finally, if granted custody, SC would not be able to see her son in SW's presence because the trial court issued a stay-away order between him and SW. Given this evidence, the trial court did not abuse its discretion by denying SC's motion for alternative disposition. Appellant's sixth assignment of error is overruled.
 {¶ 34} Appellant contends in her seventh and eighth assignments of error that the trial court erred in denying her PPLA motion. Appellant argues that under the Ninth Appellate District's interpretation of R.C. 2151.415(A), the trial court has the authority to consider her motion requesting that SW be placed in a PPLA even though FCCS did not request it. In reA.B., Summit App. No. 22659, 2005-Ohio-4936. Appellant claims that her PPLA motion is appropriate for SW because permanent custody is against appellant's and SW's wishes and because a living arrangement is available to SW.
 {¶ 35} R.C. 2151.415 governs the trial court's disposition of a child after the child has been placed in temporary custody of the children services agency pursuant to R.C. 2151.353(A). As one of five options under R.C. 2151.415(A), R.C. 2151.415(A)(5) provides, in pertinent part, that "[e]xcept for cases in which a motion for permanent custody described in division (D)(1) of section 2151.413 of the Revised Code is required to be made," a public children services agency such as FCCS "that has been given custody of a child pursuant to section 2151.353 of the Revised Code * * * shall file a motion requesting * * * (5) [a]n order that the child be placed in a planned permanent living arrangement." Although R.C. 2151.415(A)(5)'s express language authorizes only an agency with temporary custody of a child to file a dispositional motion requesting the court to order the child be placed in a PPLA, the Ninth Appellate District liberally construed R.C. 2151.415(A) to give trial courts the authority to sua sponte consider placing children in a PPLA or upon a motion of an agency, another party, a person with legal custody, or the guardian ad litem.
 {¶ 36} Here, appellant filed a PPLA motion on November 9, 2005. Even if we were to accept appellant's position that she is entitled to file a PPLA motion under the Ninth Appellate District's interpretation of R.C. 2151.415(A), appellant's position fails because FCCS filed its permanent custody motion pursuant to R.C. 2151.413(D)(1) on October 24, 2003. An agency, or any another party to the proceeding, cannot file a PPLA motion when the court is required to make a permanent custody determination pursuant to R.C. 2151.413(D)(1). R.C. 2151.415(A). Because FCCS filed a permanent custody motion pursuant to R.C.2151.413(D)(1) before appellant filed her PPLA motion, appellant's PPLA motion is without merit. Accordingly, appellant's seventh and eighth assignments of error are overruled.
 {¶ 37} Having overruled appellant's assignments of error that contest the trial court's application of Ohio's permanent custody provisions to this case, we lastly address appellant's eleventh, fourteenth and fifteenth assignments of error that collectively contest the evidentiary support for the trial court's ruling that terminated appellant's parental rights and awarded permanent custody to FCCS.
 {¶ 38} To obtain an order terminating parental rights, FCCS is required to demonstrate by clear and convincing evidence that (1) one of the four factors enumerated in R.C. 2151.414(B)(1) applies, and (2) termination is in the child's best interests.In re O.J., Franklin App. No. 05AP-810, 2006-Ohio-286, at ¶ 10. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. Id., In re Abram, supra. It does not mean the evidence must be clear and unequivocal and does not require proof beyond a reasonable doubt. Id.
 {¶ 39} On appellate review, "[p]ermanent custody motions supported by some competent, credible evidence going to all the essential elements of the case will not be reversed * * * as against the manifest weight of the evidence." In re Brown,
Franklin App. No. 03AP-969, 2004-Ohio-3314, at ¶ 11, citing Inre Brofford (1992), 83 Ohio App.3d 869; In re Abram, supra. Further, in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct.Brofford, supra, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80; In re Abram, supra. Here, competent, credible evidence supports the trial court's judgment awarding permanent custody of SW to FCCS.
 {¶ 40} To establish one of the four factors outlined in R.C.2151.414(B)(1), FCCS relied upon R.C. 2151.414(B)(1)(d), the "twelve out of twenty-two" rule. As noted, FCCS took temporary custody of SW on October 17, 2002, and SW remained in the custody of FCCS; FCCS filed a permanent custody motion for SW on October 24, 2003. Thus, at the time FCCS filed its motion, SW had been in the custody of FCCS for 12 months of a consecutive 22-month period. Accordingly, the trial court properly found that the requirement of R.C. 2151.414(B)(1)(d) was satisfied.
 {¶ 41} Because the evidence supports a finding under R.C.2151.414(B)(1)(d), the issue resolves to whether an award of permanent custody is in SW's best interests, a determination that must be supported by clear and convincing evidence. In re O.J.,
at ¶ 15. In assessing the best interests of the child, the court is to consider all relevant factors, including, but not limited to, the following (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child, (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child, (3) the custodial history of the child, (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, and (5) whether any of the factors in divisions (E)(7) to (11) apply in relation to the parents and child. R.C.2151.414(D).
 {¶ 42} R.C. 2151.414(D)(1) addresses the child's interaction with his parents, relatives, and foster parents. Except for the initial four-month period, SW lived with the same foster parents since FCCS removed him from appellant's custody. SW is bonded to his foster parents, interacts with his foster family in a comfortable manner, and calls his foster parents mom and dad and foster siblings brother and sister. Although SW is also bonded to appellant, SW's caseworker testified that appellant did not regularly interact with SW and grew more distant from SW over time. SW's guardian ad litem described the interaction between appellant and SW as one-sided: appellant remained mostly unresponsive while SW vied for appellant's attention. SW's caseworker further testified that after SW was removed from appellant's custody, appellant repeatedly missed visits with SW and did not visit SW for a significant period of time before the permanent custody hearing. SW's second caseworker testified that appellant missed 22 out of 45 scheduled visits. SW's father was never involved in the proceedings. Such evidence weighs in favor of the trial court's determination.
 {¶ 43} R.C. 2151.414(D)(2) addresses the custodial wishes of the child as expressed by the child or through his guardian ad litem. Although SW repeatedly expressed his desire to live with appellant, SW's therapist, Caroly Soloman, and SW's psychologist, Dr. Hunt, underscored that SW may not comprehend the reality of his decision. Soloman testified that a child of SW's age is unable to understand the concept of returning home, and Dr. Hunt testified that SW may have a fantasized idea about what living with appellant would be like because he has not lived with her since he was very young. SW's custodial wishes also varied depending on his environment. When the trial court interviewed him, SW continually expressed his desire to live with appellant, but when SW was interviewed in his foster home less than a week before the second hearing date, he told his guardian ad litem that he would prefer to live with his foster family. Given SW's tender age and the vacillation of SW's custodial wishes, combined with the recommendation of SW's guardian ad litem that SW be permanently placed with his foster parents, the court had sufficient evidence under this factor to support its determination.
 {¶ 44} R.C. 2151.414(D)(3) concerns the custodial history of the child. SW lived with appellant for the first three years of his life. After FCCS took custody, SW temporarily lived with relatives for four months before he was placed in his current foster home. SW has lived with his foster family for the last three years and has not lived with appellant for any substantial amount of time during that period. SW's custodial history weighs in favor of the court's determination.
 {¶ 45} R.C. 2151.414(D)(4) takes into account the child's need for a legally secure placement and whether that placement can be achieved without a grant of permanent custody to FCCS. FCCS has had custody of SW for over half of his life, making a priority SW's need to procure secure placement that may include adoption. After SW was removed from appellant's custody, appellant had the opportunity to remedy the issues that caused SW to be placed with FCCS by specifically maintaining stable housing and employment, completing parenting and domestic violence classes, completing her GED, obtaining drug and alcohol counseling, and keeping SW from having contact with her boyfriend. Apart from completing parenting classes, appellant failed to remedy any of the issues. Appellant never obtained her own housing but drifted between different relatives' and friends' houses. Appellant did not secure steady legal employment, did not attend domestic violence classes, repeatedly failed to return drug screenings, and directly and indirectly continued to be involved with her boyfriend. Because housing, employment, domestic violence, and drug abuse are still issues present in appellant's life, permanently placing SW with appellant was not a viable option.
 {¶ 46} On the other hand, SW has lived in the same foster home for the last three years. SW's guardian ad litem testified that under his foster parents' care, he was doing well in school and has a stable family environment. SW's caseworker testified that SW appears comfortable with his foster parents and interacts well with them. SW's therapist described SW's foster mother as very loving, nurturing, and supportive of SW. SW's second caseworker testified that SW needs a permanent placement that severs appellant's ties with SW because of the negative impact appellant's sporadic visits and inconsistent care have on SW's well-being. The foster family is a possible adoptive placement for SW, and permanent custody with FCCS would allow such a placement for SW. Given this evidence, this factor weighs in favor of the court's determination.
 {¶ 47} In the final analysis, the trial court had sufficient evidence to find by clear and convincing evidence that SW's best interests are served by placing him in the permanent custody of FCCS to facilitate his adoption into a permanent home. The same evidence also supports the conclusion that the trial court's decision is not against the manifest weight of the evidence. Accordingly, appellant's eleventh, fourteenth, and fifteenth assignments of error are overruled.
 {¶ 48} Having overruled appellant's fifteen assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Brown and Sadler, JJ., concur.