DECISION
{¶ 1} Appellant, G.B.[1] appeals from the September 20, 2005 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting a motion for a planned permanent living arrangement ("PPLA"), as to appellant's son, K.B., born September 20, 1989.
 {¶ 2} On July 9, 2002, Franklin County Children Services ("FCCS"), filed a complaint alleging K.B. qualified as a neglected, abused, and dependent child pursuant to R.C.2151.03(A)(2), 2151.031(C), and 2151.04(C), respectively. The complaint alleged the Columbus Police Department transported K.B. to Children's Hospital after he was found running the streets naked. He was observed to have several bruises and lacerations about his body. The complaint further alleged K.B. reported that he was taking out the trash when his mother became angry with him, instructed him to remove his clothing, and began hitting him with a tree branch switch. According to the complaint, K.B. also reported that he was hit with an extension cord in the past. On September 24, 2002, K.B. was adjudicated a dependent minor pursuant to R.C. 2151.04(C) and temporary custody was awarded to FCCS.
 {¶ 3} On February 10, 2003, the trial court dismissed appellant's December 11, 2002 motion for custody of K.B.[2]
On May 6, 2003, FCCS moved the court to extend the temporary custody order of K.B. and for approval of its case plan. On June 11, 2003, the trial court ordered that appellant could have unsupervised weekend visitation with K.B., not to exceed four days. The trial court also ordered family counseling for appellant and her son. Shortly thereafter, on August 1, 2003, FCCS sought a termination of the temporary custody order of K.B. Said termination was granted by the trial court on August 19, 2003. However, on December 23, 2003, FCCS filed a motion to modify custody of K.B. alleging that appellant hit K.B. on his face and head with a broomstick. As a result of this incident, appellant was arrested and charged with domestic violence and assault. The magistrate issued an emergency care order on December 23, 2003, ordering temporary custody to FCCS. On July 8, 2004, appellant filed a motion to return K.B. to her care and custody; however, the trial court dismissed the motion on August 23, 2004, for lack of sufficient information.[3] On Oct 25, 2004, FCCS filed a motion seeking an order that K.B. be placed in a PPLA. At the hearing, the guardian ad litem supported the motion for a PPLA. The magistrate granted FCCS' motion at the hearing on April 29, 2005.[4] Appellant filed objections to the magistrate's decision, and after a hearing on said objections, the trial court overruled appellant's objections and upheld the decision of the magistrate. This appeal followed.
 {¶ 4} Appellant brings the following three assignments of error for our review:
1. THE DECISION WAS AGAINST THE WEIGHT OF THE EVIDENCE.
2. K.B.'S ALLEGED VIOLENT BEHAVIOR WAS NOT PROVEN AT TRIAL.
3. HEARSAY OBJECTIONS WERE CONSISTENTLY OVERRULED.
 {¶ 5} Appellant argues in her first assignment of error that the trial court's decision granting FCCS' motion for a PPLA as to K.B. was against the manifest weight of the evidence. An abused, neglected, or dependent child may be placed in a PPLA with a public children services agency or private child placing agency if the court finds by clear and convincing evidence that such arrangement is in the best interest of the child, and if one of the factors listed under R.C. 2151.353(A)(5) exists. See R.C.2151.353(A)(5); See, also, In re Jenkins, (June 28, 2001), Franklin App. No. 00AP-1411. In the instant case, the trial court granted the motion for a PPLA based on R.C. 2151.353(A)(5)(b), which provides:
(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
* * *
(5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:
* * *
(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
 {¶ 6} On appellate review, a trial court's judgment granting a motion for a PPLA supported by some competent, credible evidence going to all essential elements of the case will not be reversed as against the manifest weight of the evidence. In reWheeler, Muskingum App. No. CT2005-0015, 2005-Ohio-3613, citingIn re Brofford (1992), 83 Ohio App.3d 869. In determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court were correct. In re Brofford at 876, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. "`The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" In re SW, Franklin App. No. 05AP-1368, 2006-Ohio-2958 at ¶ 39, quoting Seasons Coal Co. at 80.
 {¶ 7} In assessing the best interests of the child, the court is to consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child, (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child, (3) the custodial history of the child, (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, and (5) whether any of the factors in divisions (E)(7) to (11) apply in relation to the parents and child. R.C.2151.414(D).
 {¶ 8} Appellant's argument with respect to the trial court's decision is threefold. The first part of appellant's argument concerns two FCCS caseworkers, Mr. McKnight and Mr. Finkelstein, both of whom testified that appellant was not capable of caring for her son. Appellant asserts that these two individuals had only limited involvement with appellant and K.B., unlike Ms. Ryan, an independent social worker, who testified that she observed significant growth and positive changes in appellant, and recommended that K.B. return home with her. Appellant asserts that Ms. Ryan's testimony should have been given greater weight because she has years of experience, not only in social work, but also with the B. family.
 {¶ 9} As discussed above, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. In the Matter of D.R., Franklin App. No. 05AP-492, 2006-Ohio-___. In the case sub judice, given the record, it is clear that the magistrate found the testimony of the FCCS workers to be credible, even given their limited exposure to the family. Both caseworkers testified as to how long each was assigned to the case prior to trial, the number of times each met with the family, and their familiarity with the case file upon review of the same. Mr. McKnight has worked for FCCS for 16 years, and has been a Child Welfare Caseworker for five years. Although he was only recently assigned to this case on April 1, 2005, he testified that he reviewed the file, and after such review he concluded:
Yes. It's my impression that — that [appellant] doesn't fully understand the severity of the problems, we're dealing with the severity of her own limitations and the severe — and the severity of K.B.'s behavioral problem. I think she would like to have him back home and I think she thinks that, you know, if she just tries hard she'll be able to give him all the help he needs and be able to keep him at home. And I think it's not likely to work.
(Tr. at 48.)
 {¶ 10} Mr. McKnight also described that K.B. exhibits erratic and disruptive behaviors, and that he has a history of some drug abuse and being repeatedly away without leave ("AWOL"). Specifically, Mr. McKnight testified that K.B. had been AWOL ten times in the previous 15 or 16 months.
 {¶ 11} When asked about his concerns if K.B. was returned to his mother, Mr. McKnight testified that though the agency is comfortable with appellant continuing her relationship and visitation with K.B., it is his opinion that K.B. should not be returned to appellant. Mr. McKnight stated:
Yeah. That K.B. would be at risk of more physical abuse. I think mom has — I think she loves her kids, loves K.B., but she has limited ability to cope and a limited ability to cope with things. And K.B. is a kid that's gonna have a lot of crisis, he's gonna be acting out a lot as he has been just in the past, you know, a couple of weeks. And I think mom's just not be able to cope at this time with — through her limited ability and [K.B.'s], you know, pretty out of control behavior.
(Id. at 55.)
 {¶ 12} Mr. Finklestein has been employed by FCCS for 19 years, and is currently a social work supervisor. While he admitted he had not had the case for close to six months, and could not say how appellant was doing at the moment, he testified that the agency had concerns about appellant's mental health. He described that after appellant's children were removed, there was a period of time when appellant was not visiting, and when appellant made threatening phone calls to the social worker on the case at the time, to such an extent that appellant was instructed not to call the case worker directly.
 {¶ 13} Ms. Ryan has been involved with appellant on and off since 1996 through the St. Stephens Community House, where Ms. Ryan is employed. Ms. Ryan described appellant as a loving mother, and that in her opinion, the abusive incidents were out of character for appellant. Ms. Ryan hoped there would not be future abuse, and recommended that K.B. be returned to his mother. However, despite being familiar with appellant, Ms. Ryan was able to offer only very little about K.B. and his needs. Ms. Ryan indicated that appellant could receive parenting classes through St. Stephens, yet appellant had already completed two sets of parenting classes prior to both incidents of physical abuse. It is clear from the record that the magistrate did not find Ms. Ryan's testimony to be credible, and we find that such is clearly reasonable given the record before us.
 {¶ 14} In fact, the magistrate's commentary regarding Ms. Ryan's testimony is the thrust of appellant's second argument. Appellant contends that the magistrate's bias against Ms. Ryan is evident in the record, wherein the magistrate states:
I'm gonna place on the record though, I am shocked, shocked that the advocate here that came here, a licensed social worker would come here and would knowing K.B.'s needs and knowing mother's needs would advocate * * * so keenly to return this child when she's fully aware of the child's needs.
(Id. at 127.)
 {¶ 15} We do not find that this commentary demonstrates bias towards Ms. Ryan, but rather demonstrates the magistrate's thoughts regarding her credibility, a determination that is clearly within the province of the trier of fact. Credibility and bias are not one in the same, and though they can be interrelated, there is no evidence of bias in this case. The magistrate's discussion merely finds that in light of the evidence, he finds Ms. Ryan's credibility to be lacking. We find no error in the magistrate's attributing greater weight to the testimony and recommendation of the FCCS caseworkers than to the testimony and recommendation of Ms. Ryan.
 {¶ 16} Appellant also contends that the magistrate paid little attention to R.C. 2151.414(D)(1), which addresses the relationship between parents and children. Appellant directs us to her extensive efforts to get her children back, including attending parenting classes, abstaining from drugs and alcohol, and maintaining an organized home for her son. Further, appellant asserts K.B. explicitly expressed his wishes to be with his mother. The record reflects the magistrate was fully aware of the relationship between appellant and K.B. as demonstrated in the following:
Placing K.B. with mother right now would endanger mother clearly would endanger K.B. and surely would not be in his best interest. I'm gonna sustain the — the PPLA motion today. Certainly visitation will continue. Mother loves these children. I'm glad she loves these children and quite frankly, K.B. is — loves her (sic) mother dearly, but at this point in time I can't simply return these children today without their needs being met and certainly for mother's needs are more sufficiently addressed. So I am sorry today.
(Tr. at 127.)
 {¶ 17} Contrary to appellant's assertions, we find the evidence in the record supports the decision that K.B. be placed in a PPLA. Appellant testified at the hearing that she has been collecting SSI benefits since 1986 after she was shot in the head resulting in permanent brain damage. Appellant receives services to help her pay bills and perform common errands. As found by the trial court, appellant's limitations are demonstrated in her testimony. Appellant gave somewhat incoherent responses, and often her answers were non-responsive to the questions asked. Appellant was not able to articulate what her understanding was of the case plan, and when questioned about her understanding of any special needs that K.B. may have, appellant stated, "He need to be with me; that's how I feel because of everything that went on. I think he need to be with me." (Id. at 25.)
 {¶ 18} There is testimony from Mr. McKnight and Ms. Ryan regarding the relationship between K.B. and appellant, and there is evidence in the record concerning appellant's desire that K.B. be returned to her. K.B. was at a juvenile detention center at the time of trial due to a probation violation, and did not testify in this matter; however, no one disputes his expressed desire to be returned to appellant. It is also established that K.B. has been in the custody of FCCS for 12 out of 22-consecutive months, he has not been in an adoptive home, and will shortly be turning 18 years old. These factors support the finding that adoption is not in K.B.'s best interest.
 {¶ 19} In addition to describing K.B.'s history of being AWOL, excessive absenteeism from school, and his behavioral problems, Mr. McKnight described an incident at Maryhaven when K.B. became upset after being arrested, which caused him to lose a level at Maryhaven. K.B. threw a trashcan, kicked over a chair, and then went to his room where he proceeded to break the window by putting his combination lock into his sock and swinging it. Another time, K.B. reportedly climbed up into the heating vents at Maryhaven. While he did not feel that drug addiction was an issue for K.B., Mr. McKnight did testify about K.B.'s history of abusing some drugs. Though there is evidence in the record of K.B.'s desire to be with his mother, and evidence that appellant has made efforts to improve her ability to parent, we find that the weight of the evidence supports the conclusion of the trial court that appellant continues to face limitations which affect her ability to care for K.B. Therefore, we find that the magistrate's decision ordering a PPLA with respect to K.B. is not against the manifest weight of the evidence. Accordingly, we overrule appellant's first assignment of error.
 {¶ 20} In her second assignment of error, appellant contends that K.B.'s violence was not proven at trial, and that if he possesses a tendency to act out violently, there is a possibility it is in response to being separated from his mother. Contrary to appellant's argument, however, nothing in R.C. 2151.353(A)(5)(b) requires a finding that K.B. is violent. Accordingly, appellant's second assignment of error is overruled.
 {¶ 21} In her third assignment of error, appellant argues that hearsay objections were consistently and improperly overruled. Appellant makes several blanket assertions about witnesses offering testimony about things they read and areas where hearsay objections could have been made, but "did not appear useful with the hearsay objections consistently being overruled." (Mar. 20, 2006 Brief at 15.) However, appellant does not cite, with three exceptions, specific portions of the record for our review. Therefore, we will only address the three areas to which appellant directs us as it is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. State v. Watson
(1998), 126 Ohio App.3d 316, 321; App.R. 12(A)(2).
 {¶ 22} Appellant first makes reference to Mr. McKnight's testimony in response to a question posed by counsel for FCCS. The following exchange occurred:
[Counsel]: The question was did the psychological evaluation give you any insight or give you any — did it turn you towards any direction to move in this case with regard to helping mom or offering her services?
[Witness]: I — you know, I think mom — yes. Yes.
[Counsel]: Okay. And in what way?
[Witness]: Okay. It — it gives me the idea that mom may benefit from services from Franklin County MR — Franklin County Board of MRDD. That because of the her — as of — because the psychologist's diagnosis —
* * *
[Witness]: — of mental retardation that mother's likely gonna have —
[Appellant's Counsel]: Objection. Hearsay.
[Magistrate]: Overruled.
(Tr. at 45.)
 {¶ 23} Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement," as included in the definition of hearsay, is an oral or written assertion or nonverbal conduct of a person, if it is intended by him as an assertion. Evid.R. 801(A). An assertion, for hearsay purposes, is a statement about an event that happened or a condition that existed. State v.LaMar, 95 Ohio St.3d 181, 197, 2002-Ohio-2128. Statements which are not intended to prove the truth of what was said are not hearsay. State v. Davis (1991), 62 Ohio St.3d 326, 343, certiorari denied (1992), 506 U.S. 803, 113 S.Ct. 302. A statement is not hearsay when it is offered into evidence for a purpose other than "to prove the truth of the assertion by the declarant not on the witness stand at the time of the declaration." Staff note to Evid.R. 801(C); State v. Santiago,
Franklin App. No. 02AP-1094, 2003-Ohio-2877.
 {¶ 24} The purpose of Mr. McKnight's statement was not to prove that appellant is mentally retarded, rather, the statement was offered to establish what services he thought might be beneficial to appellant. Therefore, we find that the statement does not constitute hearsay, and as such, there was no error in its admission.
 {¶ 25} Appellant next directs us to the following exchange:
[Counsel]: Was it your impression that mother understood the depth of K.B.'s issues with regard to why he was at Maryhaven?
[Appellant's Counsel]: Objection. Hearsay.
* * *
[Magistrate]: Overruled.
[Witness]: I think mother has some understanding of K.B.'s behavioral issues. I — I think she's unrealistic to think that she is ready to start parenting him — him again full time. I think she cares about him a lot. I think she cares about her children, but I think she doesn't understand the — the severity of the abuse that occurred in the past and that —
(Id. at 46-47.)
 {¶ 26} The above exchange does not contain a hearsay statement. To the contrary, the testimony consists of Mr. McKnight's impression as to whether or not appellant understood K.B.'s issues with regard to why he was at Maryhaven. Consequently, we do not find that the trial court erred in overruling the objection.
 {¶ 27} Lastly, appellant directs us to the following portion of the record during the examination of Ms. Ryan:
[Counsel]: Okay. Were you aware that she had been sent to prison in 1994 for felonious assault?
[Witness]: On her child?
[Appellant's counsel]: Objection. Relevance.
[Magistrate]: Hold on.
[Counsel]: Just whether she had gone to prison for —
[Magistrate]: All right. Sustain the objection.
[Witness]: Do I answer that?
[Magistrate]: Yes.
(Id. at 102.)
 {¶ 28} Though the record reflects some confusion, in that it states the magistrate sustained the objection, but then instructed the witness to answer, no further objections were made, nor was there an attempt by the objecting party to clarify the record. Thus, appellant has waived all but plain error. Inre H.M.S., Franklin App. No. 05AP-613, 2006-Ohio-701. "In civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself." Id. at ¶ 6, citing Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 1997-Ohio-401, syllabus; In re McLemore, Franklin App. No. 03AP-714, 2004-Ohio-680, at ¶ 11. In the present case, we fail to find plain error in this instance.
 {¶ 29} We first note that the objection was based on relevance. Pursuant to Evid.R. 401, relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We find the testimony was clearly relevant for the trier of fact to assist in determining credibility by ascertaining whether or not Ms. Ryan was aware of appellant's background. Further, Ms. Ryan answered in the affirmative, and appellant has failed to establish, or even allege, any prejudice resulting from the inclusion of the testimony. We are unable to find any error, let alone plain error, in what appears to be a misstatement by the magistrate. For the foregoing reasons, appellant's third assignment of error is overruled.
 {¶ 30} Having overruled appellant's three asserted assignments of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is hereby affirmed.
Judgment affirmed.
PETREE and SADLER, JJ., concur.
[1] We note that the record reflects on August 18, 2005, G.B. legally changed her name to Miss Sis Queen Star; however, to prevent confusion, we will use the name as it appears in the case caption.
[2] The memorandum in support of the motion stated only, "I G.B. am asking for custody of my children K.B. and Y.B."
[3] The memorandum in support of the motion stated only, "I want my kids back. Drop this whole case and go free."
[4] A motion seeking a PPLA was also filed on behalf of K.B.'s sister, Yvonne. Though the court granted FCCS' motion with respect to Yvonne as well, objections to the magistrate's decision were filed only with respect to K.B., and Y.B. is not a party to this appeal.