[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
{¶ 1} Appellants, Jessica Conn and Ralph Bailey, have filed separate appeals from two March 2003 decisions by the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of Zachary Bailey and Alex Conn to appellee, Franklin County Children Services ("FCCS"). For the reasons stated below, we affirm.
 {¶ 2} In December 1999, Zachary Bailey, born in October 1997 to Jessica Conn and Ralph Bailey, and Alex Conn, born in March 1999 to Jessica Conn and Thomas Hartman, were adjudicated dependent minors and placed in the temporary custody of FCCS.[1] The children were placed in foster care, and FCCS adopted a reunification case plan which required Jessica to address various issues involving drug and alcohol abuse, anger management, domestic violence, employment and parenting issues. In July 2001, FCCS filed motions for permanent custody in both cases, and hearings on the motions took place in June, August and November 2002.
 {¶ 3} Facts adduced at the hearing indicated that Jessica Conn became involved with Ralph Bailey when she was fifteen, and that Bailey introduced her to crack cocaine. Zachary Bailey, born when Jessica was sixteen, tested positive for cocaine exposure at birth. Ralph Bailey subsequently moved to Cleveland, where he was eventually convicted of gross sexual imposition and other charges related to his involvement with a teenage girl with whose mother he was living. Meanwhile, Jessica Conn became involved with Thomas Hartman, became pregnant, and gave birth to Alex Conn in March 1999. Although Jessica voluntarily sought help for her drug problem from FCCS, in October 1999 Alex was removed from the home when Hartman reported that Jessica was smoking crack cocaine while caring for Alex. With Jessica's permission, Ralph Bailey had Zachary with him for several months, but, in November 1999, FCCS removed Zachary from Ralph Bailey's care after Jessica reported that Ralph had been keeping Zachary in a dog cage. The court found that, as of the date of the hearing, Zachary Bailey had been in continuous FCCS custody for 31 months, and Alex Conn in continuous custody for 32 months.
 {¶ 4} In granting the motion for permanent custody by FCCS, the trial court summarized its findings and conclusions as follows:
Jessica Conn has failed over a significant period of time to * * * remedy the conditions causing the child to be placed outside the child's home despite the extensive efforts made by FCCS caseworkers to provide resources to alter her parental conduct so that she could resume and maintain her parental duties. The key areas for Jessica are her admitted drug addiction resulting in one child born cocaine addicted, her abuse of alcohol, and her failure, refusal or neglect to enter treatment to deal with these issues. Both FCCS caseworkers found that Jessica needed the support of counseling and treatment programs for her problem, and although her personal counselor felt it "unnecessary", she continued to counsel Jessica at every session concerning the issue of drugs. The lack of follow through with her drug and alcohol assessment leaves her children at risk. Further, her failure to develop parenting skills sufficient to control her children's behavior over an extended period of time also leaves her children at risk. A third factor is her choice of relationships with adult males who are drug dependent and/or violent which place her children at risk. Her behaviors in this regard have changed little over the course of this litigation. Finally, while her employment has stabilized over the course of litigation, her housing situation has depended on her choice of "roommates." This has not been as stable as it might be.
In considering the factors set forth R.C. 2151.414(E)(7)(d), the father of Zachary Bailey has committed an offense under section 2907.05 of the Ohio Revised Code, as the victim was a child who lived in the parents' household at the time of the offense. Zachary Bailey cannot be placed with him. He has not completed his sexual offender training.
The children cannot and should not be returned to her care or the care of either father.
 {¶ 5} Jessica Conn now assigns the following as error:
 FIRST ASSIGNMENT OF ERROR
The trial court erred by terminating the appellant's parental rights, as that judgment was against the manifest weight of the evidence and was unsupported by clear and convincing evidence.
 SECOND ASSIGNMENT OF ERROR
The trial court erred by terminating the appellant's parental rights, when the evidence clearly and convincingly established that the appellant had substantially complied with the case plan.
 THIRD ASSIGNMENT OF ERROR
The trial court erred by terminating the appellant's parental rights where the evidence clearly and convincingly established that none of the R.C. 2151.414(E) factors were present in her case.
 {¶ 6} Ralph Bailey also has filed an appeal in this matter and assigns the following as error:
I. The trial court erred in granting the Motion for Permanent Custody filed by Franklin County Childrens Services concerning Zachary Bailey.
II. The trial court erred in failing to allow paternal uncle Glenn Bailey to participate in the trial.
 {¶ 7} Preliminarily, we note that Ralph Bailey's second assignment of error is not well-taken because Ralph Bailey lacks standing to raise the claims of Glenn Bailey, who is not a party to this appeal. Ralph Bailey's first assignment of error acknowledges that his criminal history precludes him from consideration for custody, but asserts that Jessica Conn has substantially complied with her case plan and should not lose her parental rights. Ralph Bailey's first assignment of error is not well-taken because it asserts claims on behalf of Jessica Conn, and not on Bailey's own behalf. We therefore overrule both of Ralph Bailey's assignments of error.
 {¶ 8} Jessica Conn's assignments of error are related and will be addressed together.
 {¶ 9} The right to conceive and raise one's own child is an essential basic civil right, but it is not an absolute right. In re Siders (Oct. 29, 1996), Franklin App. No. 96APF04-413, citing In re Cunningham (1979), 59 Ohio St.2d 100, 104-105. Thus, permanent custody judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. In re Brofford (1992), 83 Ohio App.3d 869,876-877. Due deference is given the decision of the trial court, which, as the trier of fact, is in the best position to weigh the evidence and evaluate the testimony. Id. at 876; In re Brown (1994), 98 Ohio App.3d 337,342.
 {¶ 10} In accordance with R.C. 2151.414(B)(1)(d), when a child has been in the custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, a trial court need not engage in an analysis of whether the child can or should be placed with either parent within a reasonable time. See, e.g., In re Williams (Dec. 24, 2002), Franklin App. No. 02AP-924, appeal not accepted for review (2003), 98 Ohio St.3d 1480. The only consideration in such a case is the best interests of the child, determined by consideration of the factors set forth in R.C. 2151.414(D) in light of the particular facts of the case.
 {¶ 11} Thus, the trial court must consider the interaction and interrelationship of the child with parents, siblings, relatives, foster parents, and others who may significantly affect the child, the wishes of the child, the custodial history of the child, the child's need for a legally secure placement and whether that placement can be achieved without a grant of permanent custody to FCCS. Additionally, the court must consider whether the parent has been convicted of a crime, withheld medical treatment or food from the child, placed the child at risk of harm due to alcohol or drug abuse, abandoned the child, had parental rights terminated with respect to a sibling of the child, or is incarcerated at the time of the filing of the motion for permanent custody. See In re Thompson (Feb. 6, 2003), Franklin App. No. 02AP-557, appeal not accepted for review (2003), 98 Ohio St.3d 1515.
 {¶ 12} Testimony in the case at bar indicated that FCCS's case plan for Jessica Conn required her to address several areas of concern, which included drug and alcohol abuse issues, domestic violence issues, particularly concerning her history of involvement with abusive or violent men, various parenting and disciplinary issues regarding her relationship with the children, and issues regarding her employment and ability to create a stable, safe home for the children. Jessica admitted in her testimony that drugs and alcohol were a problem and that she had engaged in counseling regarding substance abuse; however, she denied that she had completed a drug and alcohol treatment program, and said that she had stopped attending Alcoholics Anonymous meetings. She testified that she had recently begun employment at the Heinzerling Foundation helping to care for MRDD patients, and that prior to this she had held various temporary positions. Regarding her income, she stated that she often would be paid "under the table" and that her average yearly income had been scant, but that she did receive child support from Ralph Bailey. She also indicated that she had undergone anger management counseling. She further testified that, in an effort to comply with the case plan requirement that she avoid relationships with abusive men, she had recently gotten rid of her male roommate and was now living with a female roommate without whom she could not afford her apartment.
 {¶ 13} Two FCCS caseworkers had worked with Jessica on the case plan. Patrick Brown testified that he began working with the family in April 1999. Brown stated that, although Jessica tested clean for drug and alcohol abuse, she had never had drug treatment and that some of her screens were positive for cocaine use after the removal of the children. Brown also testified that Jessica never obtained domestic violence counseling, and that she remained in an off and on relationship with Hartman throughout the time Brown was involved with her case. Brown also stated that Jessica did not complete parenting classes, and described Jessica's interaction with the children during visitation as follows:
It was more or less interrogation, question asking. * * * Initially the visits were pretty bad with regards to her interaction or her bond or getting on the children's level, was more concerned about what was going on in her life, she'd want to talk about the specific things between her and Tom and just the goings on in the neighborhood and such like that. (Tr. at 84.)
 {¶ 14} When asked whether he ever saw Jessica threaten physical discipline, Brown stated:
I've heard her say yeah, I'll whip you ass and stuff like that and should have noted it in the ROAs. Again the visits — she would question them, interrogate them, ask them what last name was and why if they responded their last name was Bogue; [the foster family's name] start talking to them about no, your not a Bogue you're a Bailey and just constantly — constantly may be to strong, but frequently kinda berating them, badgering them, asking who do you love and do you love me more, do you love your foster mom more and those type questions.
(Tr. at 86.) Asked about his observations regarding the bond between mother and children, Brown testified that "the bond between Ms. Conn and the children is superficial. The children have actually come out and said I want a visit you mom, but I wanna go back to foster home, I want to stay at foster home, that's my family." (Tr. at 86.)
 {¶ 15} On cross-examination, Brown testified that the original concerns regarding drug use were still an issue in the case since:
By Jessica's account she met Mr. Bailey when she was young, 14 or 15. He started her on cocaine, crack and ever since then she's not addressed the issue of cocaine and certainly alcohol is a concern, her development I think pretty much stopped when she started using and in fact it's not get any better. (Tr. at 98.)
 {¶ 16} Caseworker Suzanne Boyer, who took the case over from Brown in March 2000, testified that Jessica did not have adequate resources to raise two children in her home, and that Boyer had concerns regarding Jessica's temper, Jessica's failure to adequately address and obtain treatment for her drug abuse problem, and Jessica's parenting skills. She stated that she had observed the children during Jessica's visits with them, and that, when the children were "hyper," Jessica did not seem able to control their behavior. She further indicated that, although she had observed a bond between Jessica and Zachary, over the past year that bond had decreased and that both children leave the visits easily and without expressing regret that they have to leave their mother. She also testified that by contrast the children seemed very bonded with their foster parents. She stated that the remaining barriers to placement of the children with Jessica were that Jessica needed drug and alcohol treatment, and that there were still outstanding issues regarding domestic violence, independent housing and employment.
 {¶ 17} Testifying on Jessica's behalf, Janice Beaty, a counselor with Directions for Youth and Families, stated that she had been working with Jessica since December 2001, and that in that time Jessica had become more independent, that she saw no need for Jessica to complete a drug treatment program because she had not been using crack cocaine for several years, and that in her opinion Jessica had improved in her ability to be a patient parent. On cross-examination, however, Beaty admitted that she relied upon Jessica's word that the drug use had stopped, and that Beaty had never witnessed Jessica interacting with the children.
 {¶ 18} Our review of the transcript of trial and the trial court decision indicates that there was sufficient clear and convincing evidence before the trial court supporting its decision to grant permanent custody to FCCS. The evidence showed that the children had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period. The evidence also indicated that, although Jessica had made significant progress in some of the areas of concern in her case plan, she had not undergone a drug treatment program, or made sufficient progress in developing adequate parenting skills, avoiding relationships with violent men, and setting up a stable home environment for the children.
 {¶ 19} Moreover, Jessica's compliance with the case plan was only one element to be considered by the trial court in considering the best interests of the children pursuant to R.C. 2151.414(E). Substantial completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. In this case, we must consider whether the parent has substantially remedied the conditions that caused the child's removal. See R.C. 2151.414(E)(1); In re Shchigelski (Oct. 20, 2000), Geauga App. No. 99-G-2241. Despite testimony indicating that Jessica had made progress on some of the issues expressed in her case plan, the trial court concluded, based upon the totality of the evidence before it, that Jessica had not demonstrated that she had substantially remedied the conditions which had resulted in the children's removal. It may be that, given enough time, Jessica would make sufficient progress to satisfy the court that the children could be returned to her; however, the law does not require the court to extend the temporary custody period indefinitely in order to give the parent further opportunity to address such concerns. The record indicates that Jessica did not begin to take seriously the requirements of her case plan until some two years after the children had been removed. In addition, when the hearing on the motion for permanent custody commenced in June 2002, Jessica had only just replaced a violent male roommate with a female roommate in an effort to comply with the case plan. Thus, the evidence did not support Jessica's contention that she had substantially remedied the problems which had led to the children's removal.
 {¶ 20} Based upon these considerations, the manifest weight and sufficiency of the evidence support the decision of the trial court terminating parental rights and granting permanent custody to FCCS. We therefore overrule Jessica's first, second and third assignments of error.
 {¶ 21} For the foregoing reasons, appellant Ralph Bailey's two assignments of error are overruled, Jessica Conn's three assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are affirmed.
Judgments affirmed.
BROWN and WATSON, JJ., concur.
[1] Thomas Hartman has not contested custody and is not a party to this appeal.