OPINION
{¶ 1} Appellants, Sherri Croy and Jack Brown, have filed separate appeals from two January 2004 decisions of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of Alissa Brown, born 1998, and Katie Brown, born 2001, to appellee, Franklin County Children Services ("FCCS"). This court sua sponte consolidated all four appeals. For the reasons stated below, we affirm.
 {¶ 2} In December 2000, Clara Coy, paternal cousin of Alissa, initiated a complaint, pursuant to R.C. 2151.04, in which she alleged that the whereabouts of Alissa's parents, Croy and Brown, were unknown; that domestic violence charges had been filed by Croy against Brown; that neither parent had stable housing; and that both parents had drug and alcohol problems. The court granted temporary custody of Alissa to FCCS in February 2001, and she was placed with Coy. In March 2001, Katie was born and remained in Croy's custody. In July 2001, FCCS obtained court-ordered protective supervision of Alissa. Alissa was returned to Croy's custody in September 2001, and both children stayed with Croy while she underwent treatment at Maryhaven, a drug and alcohol rehabilitation facility. Once released from Maryhaven, Croy and the children briefly lived with her mother, then moved into a hotel with Brown.
 {¶ 3} In the summer of 2002, FCCS sought and obtained temporary custody of both children due to the fact they were living in a hotel and that urine screens, along with Croy's own admission, indicated that Croy was continuing to have problems with drug use. The children were placed in foster care for approximately two months, after which they were briefly placed under court-ordered protective supervision with Brown, who was at that time living apart from Croy in a trailer. The terms of Brown's custody had included requirements that he refrain from alcohol use and prohibit Croy from visiting the home; however, evidence suggested that, during this time, Brown returned to drinking; that he had permitted Croy to visit despite the terms of the custody order; that he admitted he was overwhelmed by the stress of caring for very young children; and that he had been unable to procure safe, trustworthy childcare for the girls while he was at work. Thus, the girls were removed from his care, although Brown claims he only agreed to relinquish custody temporarily while he sought more appropriate daycare. Maintaining that Brown and Croy continued to have difficulty completing various requirements in their case plans, including maintaining stable housing and employment, and refraining from drug and alcohol use, FCCS returned the children to foster care.
 {¶ 4} The children have been in foster care in the same home since September 2002. Throughout the period between September 2002 and August 2003, FCCS continued to monitor the parents' progress with regard to successful completion of the case plans. Both parents continued to have difficulty with several issues, particularly in the area of drug and alcohol treatment, and screening. Although random urine screenings were required, neither parent consistently attended the screenings, and both have continued to deny that they have a problem with addiction, despite evidence to the contrary. For example, when confronted by a caseworker about his alcohol use, Brown explained his drinking as being due to the stress of caring for young children and denied drinking to excess. Although at various times Brown would admit that his drinking was a problem for which he needed treatment, some of his statements suggested his admissions were only to satisfy caseworkers. Evidence also suggested that, although he had lost his driver's license due to an OMVI conviction and had at various times undergone counseling and treatment for alcoholism, Brown believed that he was capable of drinking in moderation and that his claimed abstinence for several months was sufficient evidence that he did not have a problem with alcohol.
 {¶ 5} Regarding Croy, evidence indicated that she missed at least one scheduled visitation with the children due to being under the influence of drugs, and that the caseworker observed her come to one visitation while "high." (Aug. 28, 2003 Tr. at 153.) Despite her completion of in-patient treatment for substance abuse at Maryhaven, Croy continued to have relapses, and, although she denied drug and alcohol use, repeatedly failed to report for urine screenings and had only attended two out of 12 scheduled screenings. Both caseworkers involved in this case testified that Croy's substance abuse problem was ongoing, and continued to be an obstacle to any recommendation by FCCS that the children be returned to her. Evidence was also presented that Croy has four older children who are in the custody of relatives.
 {¶ 6} Croy and Brown testified that they love their children; that they intend to be married; and that, between the two of them, issues involving stable housing, employment and daycare for the children could be resolved to the point where FCCS could return the girls to their care. Caseworkers testified that Croy and Brown had missed several visitations each, but that when they did come they interacted well with the children and the children appeared to be comfortable in their presence. Testimony by the foster parents, who hope to adopt these children, indicated that, when they first came to the foster home, the children were developmentally delayed and exhibited signs of reactive attachment disorder, but that being in a positive environment in which the foster parents steadily worked with the children on these problems had resulted in their improvement. Testimony established that the girls now appear to be well-adjusted, call the foster parents "mom and dad," and have bonded with their foster family. (Jan. 20, 2004 Tr. at 39.)
 {¶ 7} Based upon this and other evidence adduced at the permanent custody hearing, the trial court entered judgment granting permanent custody to FCCS. Pursuant to R.C. 2151.414, the court determined that the children could not be placed with their parents within a reasonable time, and that it would be in their best interest to be placed in the permanent custody of FCCS. Both appellants join in an appellate brief which assigns one error:
The court erred when it determined that the children could not or should not be returned to their parents in a reasonable period of time. This finding is against the manifest weight of the evidence.
 {¶ 8} The right to conceive and raise one's own child is an essential basic civil right, but it is not an absolute right. Inre Siders (Oct. 29, 1996), Franklin App. No. 96APF04-413, citingIn re Cunningham (1979), 59 Ohio St.2d 100, 104-105. Thus, permanent custody judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.In re Brofford (1992), 83 Ohio App.3d 869, 876-877. Due deference is given the decision of the trial court, which, as the trier of fact, is in the best position to weigh the evidence and evaluate the testimony. Id. at 876; In re Brown (1994),98 Ohio App.3d 337, 342.
 {¶ 9} In accordance with R.C. 2151.414(B)(1)(d), when a child has been in the custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, a trial court need not engage in an analysis of whether the child can or should be placed with either parent within a reasonable time. See, e.g., In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205, appeal not accepted for review,98 Ohio St.3d 1480, 2003-Ohio-974. The only consideration in such a case is the best interests of the child, determined by consideration of the factors set forth in R.C. 2151.414(D) in light of the particular facts of the case.
 {¶ 10} Thus, the trial court must consider the interaction and interrelationship of the child with parents, siblings, relatives, foster parents, and others who may significantly affect the child, the wishes of the child, the custodial history of the child, the child's need for a legally secure placement and whether that placement can be achieved without a grant of permanent custody to FCCS. Additionally, the court must consider whether the parent has been convicted of a crime, withheld medical treatment or food from the child, placed the child at risk of harm due to alcohol or drug abuse, abandoned the child, had parental rights terminated with respect to a sibling of the child, or is incarcerated at the time of the filing of the motion for permanent custody. See In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, appeal not accepted for review,98 Ohio St.3d 1515, 2003-Ohio-1572.
 {¶ 11} Appellants argue that the trial court improperly presumed from the fact that Croy had not taken all of her drug screenings that her drug problems were ongoing. According to appellants, because R.C. 2151.3514(B) indicates that testing should be done once a month for 12 months, the court could not order more than 12 tests in a one-year period, and any failure by Croy or Brown to attend all of the screenings cannot be used as evidence that either of them did not comply with the requirements of the case plans that they refrain from drug and/or alcohol use.
 {¶ 12} Appellants also argue that both parents substantially complied with the case plans by undergoing drug assessment, treatment and, in Croy's case, relapse counseling. In addition, both parents maintain they attended most of the visitations scheduled, despite the distance from their home and difficulties with transportation. According to appellants, the parents' housing difficulties now have been resolved and they are able, through Brown's steady work as a roofer, to support the children. Appellants also point to evidence that the children are bonded with them, and that some of the problems the children arguably had at the time they were placed in foster care may have been due to adjustment of the children to foster care and not due to inadequate parenting.
 {¶ 13} Despite our agreement that in some of these areas there does appear to have been some improvement, the record in this case indicates that the children had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period and that, in such cases, the court's analysis does not focus upon whether the child can or should be placed with either parent within a reasonable time, but upon the best interest of the child. In re Thompson; In re Williams.
 {¶ 14} In concluding that substantial compliance with the case plan was not determinative of whether the best interest of the children required a denial of permanent custody to FCCS, this court addressed similar facts in In re Conn, Franklin App. No. 03AP-348, 2003-Ohio-5344. In that case, although evidence suggested the mother had made progress on some of the issues outlined in her case plan, the trial court nevertheless concluded that she had not demonstrated she had substantially remedied the conditions which resulted in the children's removal from the home. We affirmed the court's determination that permanent custody to FCCS was in the best interest of the children, stating, at ¶ 19:
* * * It may be that, given enough time, [the mother] would make sufficient progress to satisfy the court that the children could be returned to her; however, the law does not require the court to extend the temporary custody period indefinitely in order to give the parent further opportunity to address such concerns. * * *
 {¶ 15} Similarly, in the case at bar, despite continued efforts by FCCS to obtain compliance and ongoing, albeit sporadic, attempts by both parents to address alcohol and drug abuse issues, employment issues, housing issues, and domestic violence issues, all of these areas of concern continue to remain barriers to any possibility of reuniting the children with their parents. Meanwhile, the children bonded with their foster family, made progress in development and social interaction, and began to thrive in their new setting.
 {¶ 16} In adopting R.C. 2151.414, the legislature was cognizant of the fact that correcting problems which interfere with one's ability to adequately parent a child may require more time than a child's best interest would allow. In this case, the evidence does not indicate that Croy and Brown fully recognized and took responsibility for their problems with alcohol and drugs, nor does it suggest that they consistently applied their efforts toward alleviating those problems and complying with the case plan. Even if we could find they substantially complied with other elements of the plan, their consistent failure in this one area was sufficient evidence supporting the trial court's decision to grant FCCS permanent custody.
 {¶ 17} In addition, there was clear and convincing evidence before the court that the children had adjusted well to foster care, that they had bonded with their foster family, and that some of the initial concerns with their development and behavior had been alleviated since their foster placement. Although the children were too young for the court to consider their wishes, testimony at trial suggested the children were happy in their foster placement and that, while they did not mind visiting with their parents, they clearly looked to the foster family as their own. Because some of the behavioral issues could be linked to the lack of nurturing and stability early in life, there was evidence suggesting both children needed a legally secure placement, and that an adoption by the foster parents would provide that stability. Finally, the evidence showed that, prior to FCCS placing the children in foster care, both parents had exposed the children to the risk of harm due to alcohol or drug abuse, and that Croy's placement of her older children with relatives was evidence that she had been unable to care for siblings of these children due to ongoing addiction problems and a failure to secure adequate housing.
 {¶ 18} In light of the facts of the case, we cannot agree with appellants that the alcohol and drug testing requirements or other aspects of their case plans were excessive or unreasonable. In this case, the paramount issue was the best interest of the children, and there was ample evidence supporting the trial court's conclusion that the children be placed in the permanent custody of FCCS.
 {¶ 19} Based upon these considerations, appellants' sole assignment of error is overruled, and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are affirmed.
Judgments affirmed.
Brown and Sadler, JJ., concur.