OPINION
{¶ 1} B.W. ("mother"), appellant, appeals from the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motions of Franklin County Children Services ("FCCS"), appellee, for permanent court commitment ("PCC").
 {¶ 2} W.A. ("son"), is the son of mother and J.A. ("father"), and was born on December 21, 2003. W.A. ("daughter") is the daughter of mother and father, and was born on January 27, 2003. Mother also has another child, R.L., from another relationship. On January 21, 2004, complaints were filed alleging the daughter to be dependent and the son to be neglected and dependent. An action was also filed with regard to R.L., but, because the current appeal with regard to R.L. has been voluntarily dismissed, our discussion will be limited to son and daughter. Son was born with health issues, including acid reflux, and there were concerns by hospital staff regarding mother's ability to properly care for son's standard care and meet his special medical needs. As to daughter, there existed concerns that the family did not have stable, independent housing, and neither mother nor father had a source of income. Temporary orders of custody to FCCS were issued on January 22, 2004. On March 4 and 5, 2004, daughter and son, respectively, were found to be dependent, and temporary custody of the children was granted to FCCS. A case plan was filed on March 5, 2004. On June 27 and 30, 2005, FCCS filed motions for PCC regarding daughter and son, respectively.
 {¶ 3} A trial on FCCS's motions for PCC was commenced, and, on May 15, 2006, the trial court granted the motions with regard to son and daughter. Mother appealed the judgments, and the cases regarding R.L., son, and daughter, were consolidated for purposes of appeal. As mentioned, the case relating to R.L. has been voluntarily dismissed. With regard to the remaining appeals, mother asserts the following assignment of error:
The Court committed error by finding by clear and convincing evidence that it would be in the best interests of all three minor children to permanently terminate Appellant's parental rights and grant permanent custody to Franklin County [Children] Services.
 {¶ 4} Mother argues in her assignment of error that the trial court erred in granting the motion for PCC. A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence.In re Andy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312. Judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, paragraph one of the syllabus. We therefore must weigh the evidence in order to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment. Id., at 387, citingMartin.
 {¶ 5} In order to terminate parental rights, the movant must prove, by clear and convincing evidence, one of the four factors enumerated in R.C. 2151.414(B)(1) and that the child's best interests are served by a grant of PCC to FCCS. In re M.B.,
Franklin App. No. 04AP-755, 2005-Ohio-986. Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt. Id.
 {¶ 6} R.C. 2151.414(B)(1) provides that the court may grant permanent custody of a child to a movant if the court determines by clear and convincing evidence that it is in the best interest of the child to grant PCC to the agency that filed the motion for permanent custody and that one of four circumstances in the rule applies. Mother concedes that R.C. 2151.414(B)(1)(d) was satisfied and that the children had been in the custody of FCCS for 12 months or more of a consecutive 22-month period prior to the date the PCC motion was filed. Mother's only argument in the current appeal is that permanent custody was not in the best interests of the children, pursuant to R.C. 2151.414(D).
 {¶ 7} R.C. 2151.414(D) provides that, in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. The factors set forth in R.C.2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child.
 {¶ 8} In the present case, the trial court's decision indicates it considered the necessary best interest factors. SeeIn re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 53 (must be apparent the trial court considered the best interest factors). Our own review of the record supports the trial court's findings that it was in the best interests of the children to grant PCC to FCCS. With respect to R.C. 2151.414(D)(1), Jajuana McLean, the family's caseworker, testified the children interact very well with each other and are bonded with each other. She also stated that, although the mother's once-per-week visitations with the children have been consistent, the children do not appear sad when the visits are over, and there is no bond between mother and the children. However, the children are bonded to their foster mother. Aria Daugherty Smith, the guardian ad litem for the children, testified she could give no opinion as to whether the children were bonded with the foster mother, only that they were bonded with each other. Smith also testified she observed mother and children during one visitation where they interacted well and were happy. She stated daughter seemed bonded to mother but did not have any problem leaving mother after visitations.
 {¶ 9} With regard to R.C. 2151.414(D)(2), the trial court found that the children were too young and immature to express their wishes, and we agree. As to R.C. 2151.414(D)(3), the custodial history of the child, daughter lived with mother for approximately one year prior to the agency gaining custody. As for son, he was born at home and then was in the hospital for approximately one month before the agency gained custody. McLean stated that, after FCCS was granted custody, daughter was with a foster family until February 2004, and son was in the same home until April 2004. Daughter then lived with father's sister, B.B., and son also went to live with B.B. for a short time starting in May 2004. In June 2004, B.B. dropped off the children at FCCS, indicating she could no longer care for them. At about the same time, B.B. dismissed her motion for custody for the children. The children have been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period.
 {¶ 10} The factor under R.C. 2151.414(D)(4) involves whether the children need a legally secure permanent placement and whether such can be achieved without a grant of permanent custody to the agency. The crux of the present case centers on two issues: mother's lack of appropriate housing and lack of employment. Mother testified she had been living with her own mother for two weeks prior to hearing, but she does not pay her mother for rent, utilities, groceries or transportation. She stated she was looking for her own residence. After adding up all expenses, she agreed that, if she were to have custody of her children and live in her own residence, it would cost about $800 to $900 per month. She lived at several residences prior to her mother's, but her name was not on any of the leases. In the previous five years, she had had ten residences, and, since January 2004, she had had four, the longest being one and one-half years. Mother admitted at the time of the hearing she could not provide a stable home for the children and could not meet their needs in this respect. Mother testified that she tried to get suitable housing through FCCS but that FCCS told her it was not obligated to help her. She stated if she were granted custody, she and the children could live with her mother or B.B.
 {¶ 11} McLean testified FCCS suggested mother live in a shelter so that the shelter could give her assistance in finding suitable housing, but mother refused. McLean stated mother had not otherwise obtained appropriate housing. Her housing history has been unstable, and her name was never on a lease. Prior to the hearing, mother told her she was living with a friend, yet mother testified she was living with her mother. She also stated that, contrary to mother's claim, mother never lived with her son. McLean also testified that, even if mother had stable housing, she would still need stable employment to meet the needs of the children.
 {¶ 12} As to mother's employment and income, McLean stated mother's employment was unstable, and she worked at five different places since the case opened. The longest she was employed was six months. Mother stated she last worked two months prior to the hearing, at a job she held for eight months. She also held several fast food jobs prior to that, with up to five months between jobs and with one job lasting only one week. For the two years and three months that the children had been in the custody of FCCS, mother was unemployed for over one year. She stated she was still looking for work. McLean testified that, if the children were returned to mother, she may possibly qualify for various types of government assistance.
 {¶ 13} With regard to whether mother could care for the children, mother testified that she completed a parenting class in February 2005. She discussed many skills she learned in the class and stated she has applied these during her visits with the children. She stated in the parenting classes she learned how to discipline the children through talking, timeouts, and taking toys away. She stated that she only told the children she would "whoop" them in order to get their attention, but she did not actually strike them. She also learned to put herself in the children's shoes and listen to their problems. However, McLean testified that mother did not demonstrate any skills she learned in parenting classes during visitations, and she believed mother had demonstrated bad parenting at the visits. She stated mother yelled a lot during visitations, although Smith testified she witnessed no yelling during the visitations she observed. McLean stated mother also played "rap" songs with inappropriate lyrics for them on her phone. McLean stated mother brought the children food and clothes on occasion. She stated mother has fallen asleep during visitations.
 {¶ 14} There was also evidence presented that demonstrated there were no other suitable options for the children outside of PCC with FCCS. McLean testified that, although B.B. expressed an interest in gaining custody of the children, she never followed through or responded to FCCS's inquiry as to whether she was still interested in placement. B.B. testified that she was willing to take custody of the children and claimed she had moved before FCCS mailed her the letter regarding custody, so she never received it. She stated she had adequate income and housing to care for the children, and she receives medical assistance and a small amount of food stamps. Smith stated she had been to B.B.'s house, and her housing was adequate for the children, although somewhat small. The maternal grandmother also filed a motion for custody of the children, but that motion was dismissed, and FCCS never approved her for placement due to concerns regarding overcrowding in her home, her mental health, prior evictions, a previous history with FCCS regarding her children, and her completion of only one of ten drug screens. Although the maternal grandmother had moved to a new dwelling as of trial, she had not requested another home study since moving. During the trial, Smith visited the grandmother's current home, in which mother also lives, and stated there were rooms for the children; however, the other issues with the grandmother's suitability for custody remained unresolved. Further, the house is solely in grandmother's name; thus, mother still lacks independent housing.
 {¶ 15} As for ultimate opinions regarding PCC, McLean opined that PCC was in the best interests of the children to give them a stable home. The guardian ad litem, Smith, recommended that the court place the children with B.B., if her home could be approved; however, if that was not a possibility, her recommendation would be to grant PCC to FCCS so the children could experience a stable, loving, permanent home. She also based her decision on the fact that mother did not have independent housing or employment, and she questioned mother's motivation to remain employed when she did have a job. She stated the only concerns with mother at the time of the hearing were employment and housing, and her other concerns could be cured in a reasonable period. However, Smith believed the 22 months the children had been in the custody of FCCS had been a reasonable period for mother to have alleviated the concerns regarding housing and employment.
 {¶ 16} With regard to R.C. 2151.414(D)(5), mother testified she was once charged with passing bad checks, but the charges were dismissed. She also had a misdemeanor conviction for complicity, and she plans to pay the fine when she gets a job. There was no evidence that medical treatment or food was withheld from the children. Further, although the evidence demonstrated mother completed only one drug screen out of many, there was no evidence to suggest that mother has drug problems. Further, outside the present hearing, there was no evidence that mother ever had any other children placed in permanent custody.
 {¶ 17} After a review of the above evidence, we agree with the trial court that it is in the best interests of the children that PCC be granted to FCCS. It is undisputed that mother lacks stable, independent housing, and she currently has no employment. Inability to maintain stable housing and employment are grounds for parental termination. In re Bowers, Franklin App. No. 02AP-347, 2002-Ohio-5084, at ¶ 85 (despite the obvious needs of the children, parents failed to maintain adequate housing and employment and demonstrated a lack of commitment to the children). This need for suitable housing and stable employment were two significant issues included in mother's case plan. Failure to complete significant aspects of a case plan, despite opportunities to do so, is grounds for terminating parental rights. See In re Brofford (1992), 83 Ohio App.3d 869
(non-compliance with a case plan is a ground for termination of parental rights); In re M.L.J., Franklin App. No. 04AP-152,2004-Ohio-4358 (same). Mother's past troubles and instability with housing and employment do not foster any faith that mother is on the verge of a breakthrough in these areas.
 {¶ 18} Admittedly, in one respect, the circumstances of this case are difficult, in that the trial court and the guardian believed that mother had the ability to care for the children but that she simply lacked the necessary motivation to gain basic employment and housing to be able to put herself in the position to provide the type of environment that is needed to promote the best interests of the children. However, R.C. 2151.414 does not require that a trial court find a parent unfit before it may terminate that parent's parental rights. See In re Stillman,155 Ohio App.3d 333, 2003-Ohio-6228; In the Matter of S.W.,
Franklin App. No. 05AP-1368, 2006-Ohio-2958, at ¶ 27. R.C.2151.414(B)(1)(d) applied in the instant case, and, thus, the trial court was required to find that the termination of parental rights was in the best interests of the children and that the "12 months out of 22 months rule" applies. Parental unfitness is not a required finding to terminate parental rights under that section. See In the Matter of S.W., at ¶ 27. Further, even if such a finding were required, some level of parental unfitness is inherent in the trial court's finding compliance with the "12 months out of 22 months rule" in R.C. 2151.414(B)(1)(d). In theMatter of S.W., at ¶ 28.
 {¶ 19} Notwithstanding, the record is clear that mother was given a reasonable period to demonstrate her willingness to take the necessary steps to provide the proper care for her children, but she failed to do so. Her reasons for leaving employment, such as the work being too hard for the amount of pay, show her lack of motivation to be reunited with her children. Although mother requests more time to achieve the goals of the case plan, the PCC procedure does not provide limitless time to address parental deficiencies while the children wait for stability. The PCC procedure is designed to ensure that children are placed in the situation that is in their best interests for consistent, long-term nurturing, guidance, and support. From this standpoint, the circumstances herein are not difficult. Mother was given a reasonable opportunity to demonstrate her commitment to her children but failed to show that she was willing to take the steps necessary to secure the custody of her children. The evidence presented demonstrated that the best interests of the children would be served by granting them the finality that a PCC affords so that they may be placed in the type of stable economic and residential environment that mother has refused to obtain.
 {¶ 20} In addition, we note that, although mother argues that B.B. has "stepped forward" and requested that she be considered for placement, B.B. is not a party to the current appeal, and this court has before questioned whether a parent-appellant has standing to assert the rights of others who are not parties to the appeal. See In re S.W., at ¶ 30, citing In re Conn,
Franklin App. No. 03AP-348, 2003-Ohio-5344, at ¶ 7. We also noted in In re S.W., that, even if the parent-appellant has requisite standing, a trial court is not required to consider placing a child with a relative prior to granting permanent custody to an agency. Id., citing In re Zorns, Franklin App. No. 02AP-1297, 2003-Ohio-5664, at ¶ 28. Regardless, here, B.B.'s commitment to raise the children is dubious. Early in this case, B.B. cared for the children but then dropped them off at FCCS after several months. She did again indicate interest in caring for the children at some point, but she took no active steps to explore the matter or seek custody of the children until her belated reappearance during the second day of the present trial. It is also important to point out that B.B. never filed a motion with the court, adding further uncertainty to whether she is truly motivated to care for the children. Thus, there was no error in this regard.
 {¶ 21} For all the above reasons, we find there was clear and convincing evidence that PCC was in the best interests of the children. The trial court's decision, on this issue and in all other respects, was not against the manifest weight of the evidence. Therefore, mother's assignment of error is overruled.
 {¶ 22} Accordingly, mother's assignment of error is overruled, and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are affirmed.
Judgments affirmed.
Sadler, J., concurs.
French, J., dissents.