OPINION
{¶ 1} D.C. ("appellant") appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which granted permanent custody of his daughter, C.C., to Franklin County Children Services ("appellee"). For the following reasons, we affirm.
 {¶ 2} On November 30, 2004, appellee filed a complaint for temporary custody of C.C. The complaint alleged that C.C. was an abused, neglected, and dependent child. The complaint arose from an investigation into allegations of sexual abuse of C.C. by appellant and the paramour of C.C.'s mother ("mother"). Following a hearing on January 19, 2005, a magistrate amended the complaint to state that the paramour had been cleared of all charges involving C.C. and dismissed the allegations of neglect and dependency. The trial court approved the magistrate's finding that C.C. was an abused child and the order of temporary custody to appellee. The order granted appellant and C.C.'s paternal grandfather supervised visitation with C.C, subject to their favorable completion of a sex offender assessment.
 {¶ 3} On April 28, 2005, C.C.'s paternal grandmother requested visitation with C.C. On July 8, 2005, she also requested a continuance.
 {¶ 4} On October 7, 2005, appellee moved for permanent custody. In its motion, appellee alleged that mother and appellant had failed to complete the case plan for reunification with C.C. Appellee also stated: "There are no relatives appropriate or willing to provide adequate parental care for said child."
 {¶ 5} On June 21 and 22, 2006, the court held a hearing regarding permanent custody. On July 5, 2006, the court issued a corrected entry, which awarded permanent custody of C.C. to appellee.
 {¶ 6} Appellant filed a timely appeal, and he raises the following assignment of error:
 THE TRIAL COURT'S DECISION TERMINATING THE APPELLANT'S PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE BECAUSE THE EVIDENCE INDICATED THAT [APPELLEE] HAD NOT ATTEMPTED TO PLACE THE MINOR CHILD WITH SUITABLE RELATIVES.
 {¶ 7} We begin our analysis with R.C. 2151.414(B)(1). That section provides that the trial court, after a hearing, may grant permanent custody of a child to a state agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and that one of following applies: (a) the child cannot or should not be placed with the parents; (b) the child is abandoned; (c) the child is orphaned; or (d) the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period.
 {¶ 8} Here, appellant has raised only one issue regarding the trial court's determination that permanent custody is in the best interest of C.C., i.e., that appellee did not make adequate attempts to place C.C. with suitable relatives. As an initial matter, we note that this court has previously questioned whether a parent lacks standing to raise claims on behalf of a non-party. See, e.g., In re W.A., Franklin App. No. 06AP-485, 2006-Ohio-5750, at ¶ 20; In re SW, Franklin App. No. 05AP-1368, 2006-Ohio-2958, at ¶ 30; In re [A.C.], Franklin App. No. 03AP-348, 2003-Ohio-5344, at ¶ 7. But even if appellant has the requisite standing, we do not find error.
 {¶ 9} In support of his argument that appellee should have considered placement with a relative and, in general, should have pursued such a placement more diligently, appellant relies primarily on R.C. 2151.412, which requires agencies and courts to prepare and maintain a case plan for any child subject to a temporary custody order. R.C. 2151.412(G) provides:
 In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 * * *
 (2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family[.]
 {¶ 10} By its express terms, R.C. 2151.412(G) reflects "priorities" to guide appellee in the development of a case plan during the period of temporary custody and the court's review of that plan. We conclude that appellee acted consistently with these priorities and did consider placement with C.C.'s relatives during the period of temporary custody.
 {¶ 11} Mother testified that it would be in C.C.'s best interest to live with her mother, the maternal grandmother. However, mother stated that she first brought up the idea with appellee at her last visit with C.C. On re-cross examination, mother also testified:
 Q. * * * [Y]ou had mentioned the possibility of placing [C.C] with your mother. Isn't it true the agency discussed potential placement of [C.C] with your mother when this case first opened? Didn't they speak with you about that?
 A. They asked me. But at that time, my mom couldn't do it.
 Q. And why is that?
 A. Because my mom was going through some things and stuff that she — health problems that she needed to take care of.
(Tr. at 50.)
 {¶ 12} Mother also confirmed that she told appellee that she had been sexually abused by her stepfather and was in foster care from the age of seven.
 {¶ 13} The caseworker assigned to C.C's case testified to the following:
 Q. * * * Did the agency explore relative placement —
 A. Yes.
 Q. — of this child? Could you tell us who?
 A. Maternal grandmother had come to an office visit with [mother]. And we had discussed, I don't know if I came out and asked her, but she had basically offered information that she felt [C.C.] was in the best place and had never seen her looking so well. And at that time, did not — had — was having health issues, I'm not sure of her current status, but was having some health issues and was not able to take [C.C.].
 Q. Okay. Has she, since that time, ever expressed an interest in having [C.C.] placed with her?
 A. No.
 * * *
 Q. * * * And anybody else considered?
 A. There — no one else was offered. No infor — no other information was offered to the agency to check out.
 Q. Okay. And so no one else approached you —
 A. I'm — no one else.
 Q. No one else in the family approached you as a potential placement?
 A. No.
(Tr. at 89-90.)
 {¶ 14} The case worker also testified that C.C. had not expressed a desire to live with the maternal grandmother or to have visits with her. Thus, our review of the evidence in this case leads us to the conclusion that appellee did consider placement with the only relative who came forward during the two years of temporary custody, i.e., C.C.'s maternal grandmother, but that the maternal grandmother was not a suitable placement at that time.
 {¶ 15} Appellant also points to the maternal grandmother's testimony at the permanent custody hearing that she was interested in having custody of C.C, and he argues that appellee's efforts were less than diligent because appellee did conduct a home study at that time. As the trial court concluded, however, the grandparents, including the maternal grandmother, "did not come forward for timely consideration. It is now too late for the grandparents to be considered, recognizing the child's bond to the foster home and potential adoption."
 {¶ 16} R.C. 2151.414(E)(1) requires the court to consider whether the parents substantially remedied the conditions that initially caused the child's placement, "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home[.]" Given appellee's consideration and rejection of the maternal grandmother as a suitable placement at the beginning of the case planning process, as well as the maternal grandmother's failure to express an interest at any time prior to trial, we agree with the trial court's conclusion that appellee's efforts were reasonable and diligent.
 {¶ 17} While focusing upon appellee's failure to consider the maternal grandmother as a possible placement, appellant also argues that appellee "should have investigated whether there were any other suitable family members willing to take the child into custody, rather than waiting for family members to come forward themselves." In this respect, appellant suggests that "it is unrealistic to expect people who are unsophisticated in the law to know what they need to do in order to obtain custody of a child[.]" We find, however, that the record in this case does not support appellant's arguments, as other relatives were also part of the legal process.
 {¶ 18} Specifically, the paternal grandfather filed a motion to establish visitation with C.C. and to be joined as a party to the action. He was awarded supervised visitation, but on the condition that he complete a sex offender assessment, which he failed to do. The paternal grandmother also moved to establish visitation with C.C. and to be joined as a party to the action, and she filed a motion for continuance. The paternal grandmother did visit C.C, but appellee eventually sought to discontinue that visitation because of the paternal grandmother's questionable behavior and the greater need for C.C. and her mother to bond at those visits. Thus, the record does not support appellant's suggestion that the family lacked knowledge of or involvement in the process, nor does it suggest appellee's unwillingness to involve family members or to consider them for placement. Instead, it suggests significant interaction between appellee and C.C.'s extended family over a period of two years, and we reject appellant's arguments to the contrary.
 {¶ 19} In the end, appellant does not assert that any of C.C.'s relatives were "suitable" for placement, that appellee should have placed C.C. with any of her relatives or that the court should have granted permanent custody to one of them. Instead, appellant has asserted only that appellee failed to exercise "due diligence[,]" an assertion we reject. Therefore, appellant has failed to show that the trial court lacked clear and convincing evidence to support its determination that granting permanent custody of C.C. to appellee is in C.C.'s best interest.
 {¶ 20} For these reasons, we overrule appellant's sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
BROWN and McGRATH, JJ., concur.